Dunkin', Ch.,
dissenting. I have been unable to concur in this judgment.
The plaintiff is the trustee in a post-nuptial settlement of A. 0. Campbell and wife, executed in 1885. It is unnecessary to notice the deed of 1888. Neither of them was recorded according to law. The trustee resides in Beaufort, Campbell and wife, in Pendleton. By the terms of the instrument, the property was to be held for the joint use of husband and wife, during their joint lives, &e., with a power to the trustee to sell any part of the property and re-invest to the same uses. The trustee, residing in Beaufort, had at one time appointed G-eorge Seaborn as his agent; but, for three or four years prior'to 1st January, 1853, John T. Sloan was the agent of the trustee. He stated in his evidence that at the latter period his agency ceased.
On 29th January, 1853, A. C. Campbell and his wife joined in a bill of sale of four of the negroes included in the settlement to Jesse Cobb, for the sum ,of two thousand six hundred dollars. The whole amount was applied to the payment of the debts of A. C. Campbell, the sum of eighteen hundred dollars being received by John T. Sloan, who had been the agent of the trustee until the first of that month.
*69 The decree discharged Jesse Oobb for want of notice. But the Chancellor held, from the evidence, that M. M. Oobb was concerned in the purchase, and decreed him to account for the real value of the four slaves, with interest from 29th January, 1853. The answer of E. M. Cobb denied that he was a purchaser of the negroes; but he also averred that, although he had heard that the negroes, or some of them, in Cambell’s possession, was “a trust estate,” yet, “that he had no definite knowledge of any settlement of them by deed or otherwise.” The Chancellor infers, however, from the whole answer, that the defendant, E. M. Cobb, “ admits notice of the settlement, or, which is the same thing, notice of such facts as were sufficient to put the respondent upon the inquiry as to the settlement.” I agree entirely with the Chancellor, that E. M. Cobb is affected with notice of such facts as might have put him on further inquiry, which, deligently prosecuted, would have resulted in actual knowledge of the settlement and all the provisions of it. But this is the utmost extent of the evidence, or of the admissions of the answer, and no more weight is, or can justly be ascribed to either.
The defendant has appealed from the decree, upon the following, among other grounds, viz.:
1. Because the deed of trust is a marriage settlement, and is void and of no effect for want of registry in the offices of the Secretary of State and of Mesne Conveyance within three months from the execution thereof.
2. Because defendant was neither party nor privy to said deed, but is a stranger; and it is insisted that, under a proper construction of the Act of 1823, the deed is, as to him, an absolute nullity, and that even notice to him of its existence would not give it validity.
3. That if notice can be made to supply the place of recording, as to strangers, it must be direct and express notice of the deed itself, and not a vague indefinite impression derived from hearsay, or other unauthentic sources — and neither the plead *70 ings nor the proof, bring borne to tbe defendant such notice as dispenses with registry.
It was further insisted that, in any event, the interest of A. C. Campbell in the settlement, should be made available to the defendant for his debts which had been paid from the purchase-money.
In Steele vs. Mansell, 6 Rich. 437, it was held by a majority of the Court of Errors, that an absolute conveyance of land, though not recorded until four years after its execution, had priority over a subsequent conveyance of the premises recorded within six months from the date, but after the prior deed. The Court declared that such had been the current of decisions upon the Acts of 1698 and 1785, but they expressly state, that the decisions had been otherwise in relation to marriage settlements, and that with regard to those instruments, recording is of no avail, if done after the time prescribed by law. “We pretend not,” say the Court, “to assail those decisions. They well consist with what we hold of ordinary conveyances under the joint action of the Acts of 1785 and 1698. In 1785 the provisions concerning marriage settlements were peculiar, and, thence onward, they have been stringent and progressively exacting.” “A marriage settlement is also peculiar, and has been looked on with jealously. It is a restraint upon the marital rights — >a modification of results, which, without it, would have ensued from the marriage; and usually it is contradictory of the evidence which possession and other visible signs give of ownership. Marriage is a conveyance, open and notorious — equivalent to a written instrument duly recorded, and generally extensive in its operation. Strong reasons of policy have been thought to justify the imposition, and stern enforcement of severe terms before priority over it is conceded to a deed of the parties, making for their special case a change of its legal effect, which, if not cautiously guarded, might easily become the means of defrauding innocent third persons.” These remarks strikingly illustrate the distinction which has always *71 prevailed between marriage settlements and other conveyances in reference to the registry law, and they also point out the reasons for the distinction. Many jurists have expressed their deep regret that, even in respect to ordinary conveyances, express notice had been held to dispense with registration as between strangers to the instrument — that the salutary provisions of the Act had been frittered away, and the policy of the law defeated in the vain attempt to prevent particular, or occasional injustice. The evil is not so much in the principle which recognizes such exception, as in the difficulty of applying it with safety in any ease, and without the hazard of introducing more extensive mischief. But, for the reasons so clearly stated in the judgment of the Court of Errors, the Legislature have always manifested particular jealousy in relation to marriage settlements, and, for the protection of the community, have prescribed, in strong and unambiguous terms, the character of notice which shall affect those who are dealing with the ostensible owners of property. The course of legislation upon the subject is instructive. By the Acts 1785 and 1792, (4 Stat. 656; 5 lb., 203), marriage settlements not recorded within three months from the execution thereof, in the office of the Secretary of State, were declared null and void with respect to creditors and bond fide purchasers and mortgagees. These terms are sufficiently plain; and for thirty years after the enactment of these laws, the judicial history of the country affords no instance of any exception engrafted on the statute. Givens vs. Branford was decided in 1822, by a divided Court, upon a special verdict. It is there stated to have been “ the first time that the question has arisen under the Act of 1785,” and that “there was some difference of opinion” in the Court. It was ruled, however, by a majority of the Court, that “the actual notice of the marriage contract received by the plaintiff was sufficient to bar his claim to the settled estate.” This decision was not published until the following year (1828); and, in December of that year, the Legislature passed an Act *72 which declared that “no marriage settlement shall be valid until recorded in the office of the Secretary of State, and in the office of the Register of Mesne Conveyances of the district where the parties reside; provided, that the parties shall have three months to record the same, and if not recorded within three months, the same shall be null and void.” It was for some time supposed by many, that the general terms of this Act applied as well between the parties as to strangers. And in Baskins vs. Giles, Rice Eq. 324, Judge Johnson, who had concurred with the majority of the Court in Givens vs. Branford, intimates the opinion, that the Act of 1823, so construed, was “a wise regulation.” “The numerous evils, and many vexatious law suits, which have grown out of the neglect to record deeds,” says he, “are familiar to every one.” He adverts to the doctrine, that notice to subsequent purchasers and creditors should supply the want of recording, and says, that “ the titles to many of the largest estates, both real and personal, have depended often on questionable proof of notice.” But in Fowke vs. Woodward, Speer Eq. 233, it was ruled that recording was no part of the instrument itself, and that, therefore, the contract was binding between the parties, though not recorded according to law. This decision is in strict conformity with the provisions of the Acts of 1785 and of 1792, and with the general policy of the registry law. But, considering the time at which the Act of 1823 was passed, immediately after the first decision of the Courts that actual notice of a marriage settlement, as of any other deed, dispensed with the necessity of recording as to creditors and purchasers, and the acknowledged mischief which had frequently resulted from the doctrine, as applicable to ordinary conveyances, it is not too much to suppose — it is due to the clear and emphatic language of the Legislature to affirm — that the object was to cut up by the roots this fruitful source of litigation and uncertainty in relation to marriage settlements, and by declaring the deed ineffectual “until recorded in the offices of Secretary of *73 State and of Mesne Conveyances,” to protect purchasers and .creditors, not only from the false signs of apparent ownership, but from having their titles depend upon what Judge. Johnson styles “questionable proof of notice.” It is justly remarked by the Court of Errors, in Steele vs. Mansell, that, “marriage settlements have always been looked upon with jealousy”- — that “ the legislative provisions concerning.the.m have been peculiar —have been stringent and' progressively exacting.” But this jealousy has', arisen from the peculiar-nature of the contract and the danger to the community from the condition of things which'it creates. The “ progressively exacting” ■ legislation to which the Court adverts,.has.been principally directed to the requirements of recording, and recording promptly. 1 ‘ Marriage itself,” says the Judge, “ is a conveyance, open and notorious,” and, in order to give priority to a deed of the parties making for their special case a change of the legal effect of marriage, has been thought to justify the imposition and stern enforcement of severe terms, in order to protect the rights of third persons. Besides, in the common transfers of property, the ordinary instinct of self-interest would prompt the parties in possession to place on record their muniments of title. But a marriage settlement is a. restraint upon the marital rights of the husband’s dominion over property-of which he is the possessor and apparent owner. Practically he may be, at least, indifferent upon the subject. ■ With much reason then has the law jealously provided against the supineness, or neglect, or fraud of thpse ■ interested under the instrument, by requiring this character of notice in order to sustain their rights under it.
Although, in reference to ordinary conveyances, our Courts have adopted the exception introduced by the English Courts to the registry laws,- yet, as remarked by Chancellor Be Saussure, “ we have followed them ivith rather'more guarded steps. We require the notice of the deed to be brought home clearly and positively.’” It is impossible, from any part of the testimony, to infer any such notice on the part of the defendant, *74 E. M. Cobb. Nor is tbe decree placed on tbis ground. The Chancellor says, “ I think this answer admits notice of the settlement, or which is the same thing, notice of such facts as were sufficient to put the defendant upon the inquiry as to the settlement.” No case has, I believe, carried the doctrine to this extent, in reference to marriage settlements, either before or since the Act of 1823. It appears to me inconsistent not only with good policy, but with the plain provisions of that law. Being about to purchase, or having purchased, from one in possession of slaves, and with all the apparent marks of ownership, an idle by-stander, or sincere friend, suggests that it is a trust estate. This is certainly enough to put the party on the enquiry. He searches the office of Secretary of State, finds no deed on record, concludes that the suggestion was an unfounded rumor, or, at least, feels himself safe under the protection of the statute, and completes his bargain. Is he not only to lose his money, but to pay for any extra value that may be fixed on the slaves, because he did not further prosecute his searches, ascertain who was the trustee, and go to Beaufort to enquire of the trustee as to the provisions of the deed, and the authority of the cestui que trust to sell ? If the doctrine affirmed be applicable to marriage settlements, it appears to me practically to abrogate the salutary provisions of the statutes, and to substitute for the certainty of law, the vague remembrance of witnesses, or the doubtful inference of magistrates. Marriage settlements are wholly unobjectionable in themselves. They are regarded with jealousy by the community, only because of the danger to which they subject those who may deal with the parties. The Legislature have, therefore, declared that no marriage settlement shall be valid until recorded in the proper offices, and if not recorded within three months, shall be null and void. And (as is elsewhere said) who will undertake to prescribe for the Legislature what provisions they shall impose for the purpose of protecting the community? Yet, by the construction which is given, the law is-rendered rather a snare *75 than a shield. Persons relying upon the law, relax or limit, their, vigilance, and suffer the penalty of their confidence. In Steele vs. Mansell, the case of McCartney & Gordon vs. Ferguson, 2 Hill Ch. 180, is cited, as illustrating the distinction between marriage settlements and ordinary conveyances. The settlement was recorded in the Register’s office, (by misapprehension as the law then stood,) within the period prescribed by law, and in the office of the Secretary of State, but after the period. Nearly twenty years after the recording of the deed in both offices, a debt was contracted by the husband with a merchant of Charleston, where the instrument was on record. The deed was declared null and void as to creditors, because not recorded in the office of the Secretary of State within three months. Some general remarks of the Court may be well applied to the Act of 1823. “There is no room in the construction of the Act, to say (observes the Judge) that it has been substantially complied with, and its ends answered.” “ The Legislature have excluded all construction of a supposed intention by the use of plain words,” &c. “In the construction of a statute, I know no rule more safe than to adhere to the sense of the Legislature, as manifested by the plain and literal meaning of the words used. To adopt any other rule would be to legislate, not to construe.” But if a deed for twenty years spread upon the proper records in the city where the parties resided, be not regarded as notice, or rather cannot be construed to dispense with the positive requisitions of the statute as to the time of recording, how can the “plain words” of a more recent and “more exacting law” be construed to have “ its ends answered,” by notice of such facts as might put thé party on the enquiry ? When, too, the first stage of such enquiry would assure him that, if any such deed existed, it was as to him void in law? The Acts of 1785 and 1792, already required settlements to be recorded in the office of the Secretary of State. If, in that part of the Act of 1823, declaring them to be invalid until recorded in the office of the Secretary of *76 State, the Legislature had any meaning, it was' to preclude construction, and to prevent any substitution of notice for-that prescribed by the statute. I am, for these reasons, of opinion that the defendant’s third ground of appeal is well taken.
But the defendant has paid the purchase-money, (two thousand six hundred dollars,) which has been applied to the payment of creditors of A. C. Campbell, and he holds the bill of sale of himself and his wife. In any event, I think, that in the accounting, he is entitled to all the interest of A. C. Campbell in the premises,’and that he is also entitled to be subrogated to the rights of the creditors, whose claims he has extinguished, to the interest of A. C. Campbell in the trust estate under the provisions of the deed.
Decree modified.